# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| CODY MILLER, | ) |
|     *Plaintiff*, | ) Case No. 2:23-cv-79 |
| v. | ) Judge Travis R. McDonough |
| MATT PATTERSON | ) Magistrate Judge Cynthia R. Wyrick |
|     *Defendant*. | ) |

## MEMORANDUM OPINION

The Court is in receipt of a pro se prisoner's civil-rights complaint under 42 U.S.C. § 1983 (Doc. 2) and motion for leave to proceed *in forma pauperis* (Doc. 1). For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 1) and **DISMISSES** the complaint (Doc. 2) for failure to state a claim upon which § 1983 relief may be granted.

### I. MOTION TO PROCEED *IN FORMA PAUPERIS*

A review of Plaintiff's certified-inmate-trust-account record demonstrates that Plaintiff lacks sufficient financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion (Doc. 1) will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 220 West Depot Street, Suite 200, Greeneville, Tennessee, 37743 as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the

six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A), (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three-hundred-fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1914(a), 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this memorandum opinion to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy. This memorandum opinion shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. COMPLAINT SCREENING

### A. Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. However, courts should liberally construe pro se pleadings filed in civil-rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

B.   **Allegations of Complaint**

Carter County Jail Captain Matt Patterson placed Plaintiff on administrative protective custody/segregation (hereinafter "administrative segregation"), despite Plaintiff never requesting such a status. (Doc. 2, at 3–4.) In administrative segregation, Plaintiff is housed in a medical cell where he is constantly on camera, behind two doors where he cannot hear or see the television, "denied religion program," denied inmate outreach programs, denied full access to law books, and made to take recreation time last and alone. (*Id.* at 4.) Plaintiff contends that on April 24 and 25, 2023, Captain Patterson gave Plaintiff recreation time with other inmates, but that beginning April 26, 2023, Plaintiff was back to having recreation time alone. (*Id.*) Plaintiff contends that Captain Patterson's conduct violates his Eighth Amendment right to be free from cruel and unusual punishment, it is "crude an[d] libelous[,]" and it is a "defamation of [his] character." (*Id.*) Plaintiff states that he has had to seek mental-health services due to the isolation and unfair treatment. (*Id.* at 4–5.)

Aggrieved, Plaintiff filed this action seeking $1 million in damages for pain and suffering. (*Id.* at 5.)

C. **Analysis**

i. *Cruel and Unusual Punishment*

Plaintiff's claim that his placement in administrative segregation violates the Eighth Amendment's prohibition against cruel and unusual punishments contains both objective and subjective elements. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

As to the objective element, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Accordingly, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Instead, only conditions of confinement that involve "the wanton and unnecessary infliction of pain," that are "grossly disproportionate to the severity of the crime," or that result in the denial of the "minimal civilized measure of life's necessities" will violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346–47. Therefore, in examining claims alleging that the conditions of a plaintiff's confinement violate the Eighth Amendment, courts must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see also Rhodes*, 452 U.S. at 347.

As to the subjective element, a plaintiff must establish that the prison official acted with a sufficiently culpable state of mind—that of deliberate indifference to a substantial risk that the

prisoner would suffer serious harm. *See Wilson*, 501 U.S. at 303; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Richmond*, 450 F. App'x at 455 ("The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs.").

Mere "placement in segregation" will not sustain an Eighth Amendment claim, because it is "a routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (citing *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)). Instead, Plaintiff may support an Eighth Amendment claim based on his segregated status only by alleging that the segregation deprived him of some basic human need. *See Rhodes*, 452 U.S. at 347-48; *see also Harden-Bey*, 524 F.3d at 795 (finding confinement in administrative segregation "three years and running" failed to state Eighth Amendment claim). Plaintiff alleges that he receives fewer privileges than inmates in general population, but he does not maintain that he has been denied food, shelter, clothing, medical attention, or other basic human needs. In fact, Plaintiff confirms that he receives recreation time and has access to mental-health care despite his placement in administrative segregation. Therefore, the Court **DISMISSES** Plaintiff's Eighth Amendment claim.

## ii. Due Process

Liberally construing Plaintiff's complaint, the Court otherwise considers whether Plaintiff's placement in administrative segregation states a cognizable due process claim. To do so, Plaintiff must demonstrate a liberty interest that is protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). This requires

Plaintiff to show that being deprived of a right or interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff has no liberty interest in either his housing placement or in his security classification. *See, e.g.*, *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). And the Sixth Circuit has stated under various circumstances that "administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest without regard to duration." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citations omitted); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (finding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*").

Rather, administrative segregation is considered atypical and significant only in "extreme circumstances," *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010), such as a "prolonged or indefinite" period in restrictive conditions, *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (citing *Wilkinson*, 545 U.S. at 224). Plaintiff does not advise how long he has been held in administrative segregation and forced to take recreation time alone, and therefore, he has failed to allege a prolonged period of extreme deprivation sufficient to establish a cognizable due process claim.[1] *See, e.g.*, *Bishawi,* 628 F. App'x at 344 (holding sixty-nine

---

[1] Plaintiff has not raised a First Amendment claim that his association rights have been infringed, but the Court nonetheless notes that the Supreme Court has found freedom of association "among the rights least compatible with incarceration" and thus, "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Limiting an administratively segregated inmate's contact with other prisoners bears a legitimate

days in administrative segregation did not constitute due process violation); *Joseph*, 410 F. App'x at 868 (holding sixty-one days in segregation is not atypical and significant). Because Plaintiff has not demonstrated that his confinement in administrative segregation is atypical and significant relevant to the ordinary incidents of prison life, the Court **DISMISSES** this due process claim.

### iii. Privileges

Plaintiff also contends that he has been denied access to various privileges, including access to the television and outreach programs, while in administrative segregation. (Doc. 2, at 4.) However, Plaintiff possesses no constitutional right to such programs or amenities. *See, e.g.*, *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."); *Vick v. Core Civic*, 329 F. Supp. 3d 426, 451 (M.D. Tenn. 2018) ("Simply stated, there is no constitutional right to television while incarcerated.") (citing *Rawls v. Sundquist*, 929 F. Supp. 284, 288–89 (M.D. Tenn. 1996)). Thus, the Court **DISMISSES** this claim.

### iv. Religion Programs

Plaintiff maintains that he has been "denied religion program[]s" as a result of his placement in administrative segregation. (Doc. 2, at 4.) Prisoners retain a First Amendment right to freely exercise their religion, but that right may be restricted in a means reasonably related to a legitimate penological interest. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348–49 (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Turner v. Safley*, 482 U.S. 78, 89 (1987). In ensuring that this right is protected, prisons do not have to respond to every religious request of

---

penological interest of ensuring institutional security as well as the individual inmate's safety. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (requiring challenged regulation to bear rational relation to a legitimate penological interest).

an inmate; they only must allow prisoners a reasonable opportunity to exercise their faith. *Cruz*, 405 U.S. at 322 n.2.

Here, Plaintiff has presented only a conclusory allegation that he was denied religious programs, and his complaint is devoid of any facts that would allow the Court to plausibly infer that his constitutional right to exercise his faith has been impermissibly infringed. As such, the Court **DISMISSES** this claim. *See Twombly*, 550 U.S. at 555, 570 (holding plaintiff must plead enough facts to state a facially plausible claim).

### v. *Access to Courts*

Plaintiff alleges next that he is denied full access to law books while in administrative segregation. (Doc. 2, at 4.) However, detention facilities may "reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of leg[al] papers so long as the regulations do not frustrate access to the courts." *Walker v. Mintzes*, 771 F.2d 920, 931–32 (6th Cir. 1985). Plaintiff has not alleged that he has suffered some legal harm because of the allegedly restricted access, and, therefore, this allegation fails to state a claim upon which relief may be granted. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) (holding inmate claiming lack of access must demonstrate his prison officials impeded non-frivolous civil rights or criminal action); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation."). Accordingly, the Court **DISMISSES** this claim.

### vi. *Equal Protection*

To the extent Plaintiff's complaint may be liberally construed to allege that Plaintiff has been denied privileges accessible to other inmates, the Court considers whether the alleged disparity in treatment violates the Fourteenth Amendment's Equal Protection Clause, which

provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006)).

Here, Plaintiff's complaint does not provide a factual basis for his claim that he is treated differently from other similarly situated prisoners, and such "conclusory allegations of unconstitutional conduct" are insufficient to state an equal protection claim. *See Mosley v. Batts*, No. 19-5355, 2019 WL 8399882, at *2 (6th Cir. Nov. 19, 2019) (quoting *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)). Accordingly, the Court **DISMISSES** this claim.

### vii. *Libel and Defamation*

Plaintiff contends that Captain Patterson's decision to place him in administrative segregation despite any absence of wrongdoing is libelous and defamatory. (Doc. 2, at 4.) However, claims filed under § 1983 are comprised of two elements: (1) a deprivation of rights "secured by the 'Constitution and laws' of the United States" (2) committed by a defendant acting "under color of [state] law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) (citations omitted). Defamation and libel do not state a § 1983 claim, because harm to one's reputation does not implicate a protected "liberty" or "property" interest under due process principles. *Paul v. Davis*, 424 U.S. 693, 712 (1976) (holding "interest in reputation . . . is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law"); *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) ("Absent a further injury, such

as loss of a government job or loss of a legal right or status, defamation, by itself, does not constitute a remediable constitutional claim.").

Further, Plaintiff's allegations are insufficient to state a claim under state law. Libel is written defamation. *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 820 (Tenn. 1994). To establish a case of defamation, a plaintiff must prove that a party: (1) published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless regard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citation and quotation marks omitted). "[I]t is injury to one's reputation for good character with the public which is necessary for an actionable claim of defamation." *Davis v. The Tennessean*, 83 S.W.3d 125, 130 (Tenn. Ct. App. 2001). Plaintiff suffered no such injury by his mere placement in administrative segregation. *See Ali v. Moore*, 984 S.W.2d 224, 229 (Tenn. Ct. App. 1998) (finding that libel claims based on depictions that do not subject plaintiff to "'public hatred, contempt or ridicule' and, thus, do not constitute a 'serious threat to [his] reputation'" are frivolous) (citation omitted). Therefore, the Court **DISMISSES** Plaintiff's claims for defamation and libel both under § 1983 and under state law.

### viii. Privacy

Plaintiff alleges that he is under constant video surveillance in administrative segregation. (Doc. 2, at 4.) Liberally construing Plaintiff's complaint, the Court construes this as an allegation that the constant surveillance is an unreasonable "search" in violation of Plaintiff's Fourth Amendment rights as incorporated by the Fourteenth Amendment. *See Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987). Typically, prisoners maintain no right to privacy in their cells. *See Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984) ("A right of privacy in traditional

10
Case 2:23-cv-00079-TRM-CRW   Document 4   Filed 07/13/23   Page 10 of 12   PageID #: 26

Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security."). However, the Sixth Circuit has recognized an inmate's limited right to bodily privacy under the Fourth Amendment in circumstances whether the prisoner is forced to expose himself to a member of the opposite sex. *See, e.g.*, *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (observing right to privacy claim under Fourth Amendment where male inmate forced to endure outdoor strip search in presence of female correctional officers); *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004) (recognizing that "a prison policy forcing prisoners . . . to be exposed to regular surveillance by officers of the opposite sex while naked—for example while in the shower or using a toilet in a cell—would provide the basis of a claim on which relief could be granted"). Plaintiff has not alleged similar facts to allow a plausible inference that his right to privacy has been violated. Therefore, the Court **DISMISSES** this claim.

      *ix.*     *Absence of Physical Injury*

Finally, the Court notes that under the PLRA, a lawsuit brought by an institutionalized person requires a "physical" injury to permit recovery for mental or emotional injury. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ."). Plaintiff has not alleged any physical injury because of the constitutional violations alleged in his complaint, and, therefore, recovery for "pain and suffering" is not permitted under the PLRA.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 1) is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to mail a copy of this memorandum opinion to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Plaintiff has failed to state a claim upon which relief may be granted under § 1983, and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

6. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**